IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ALEXANDER | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5387 |
| | : | |
| RAYMOURS FURNITURE | : | |
| COMPANY, INC. | : | |
| *doing business as* | : | |
| *RAYMOUR & FLANIGAN* | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                     **August 13, 2014**

      Plaintiff John Alexander sues Raymours Furniture Company, Inc., d/b/a Raymour & Flanigan (Raymour), his former employer, alleging Raymour violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., by terminating him in retaliation for exercising his FMLA rights. Raymour seeks to compel arbitration of Alexander's FMLA claim pursuant to a mandatory arbitration program the company adopted in January 2012, under which the company and its employees are required to submit employment-related disputes to arbitration. For the reasons set forth below, Raymour's motion to compel arbitration will be granted.

**FACTS**[1]

      Alexander worked for Raymour as a sales associate from January 23, 2006, until March 13, 2013.[2] At the start of his employment, Alexander signed a "New Hire Information" form and

---

[1] The following facts are drawn from Alexander's Complaint and the documentary evidence submitted by Raymour in support of its motion to compel arbitration. Although Alexander opposes the motion, he does not challenge the authenticity of, or otherwise dispute, Raymour's evidence regarding the company's adoption of an arbitration program or his own acknowledgment of the program. Nor does he request an opportunity to take discovery on these—or any other—issues.

[2] Alexander alleges he began his employment with Raymour in February 2005. Compl. ¶ 3. Raymour, however, has submitted a copy of Alexander's "New Hire Information" form, which

a "Sales Agreement" form, both of which acknowledged his receipt of Raymour's Associate Handbook.  On October 7, 2009, Alexander signed another acknowledgment form, again indicating he had received a copy of the Associate Handbook and stating:

> I understand that [the Handbook] contains important information about Raymour & Flanigan's employment policies, that I am expected to read the Handbook and familiarize myself with its contents, and that the policies in the Handbook apply to me.  I further understand that Raymour & Flanigan has the right to change its employment policies at any time, that I am responsible for becoming familiar with these changes as they occur, *that my continued employment constitutes my agreement that such changes apply to me*, and that I can find the most up-to-date version of the Handbook and the company's policies through HR Direct on Raymour & Flanigan's Intranet.

Midlar Aff. Ex. 2 (emphasis added).  By signing the form, Alexander also acknowledged the Handbook was not a contract or promise of continued employment and that his employment with Raymour was at-will.  *Id.*

In January 2012, Raymour adopted an "Employment Arbitration Program" and incorporated the Program into its Associate Handbook.  Midlar Aff. ¶ 12.  Raymour also uploaded the new version of the Associate Handbook containing the Arbitration Program to the company's online human resources portal.[3]  *Id.*  Under the Arbitration Program, both Raymour and its employees are required to submit to arbitration all employment-related and compensation-related "claims" asserted or pursued after the Program's January 1, 2012, effective date, regardless of when the claims arose.  Midlar Aff. Ex. 6, at 57-58; *see also id.* at 61 (stating that under the Arbitration Program, both "you [i.e., the employee] and we [i.e., Raymour] waive

---

reflects a January 23, 2006, hire date.  Midlar Aff. Ex. 1.  This discrepancy is immaterial to the issues before the Court.

[3] Raymour began using an online portal through which employees could manage their personal data and access various human resources materials, including the Associate Handbook, in July 2010.  Midlar Aff. ¶¶ 7-8 & Exs. 3-4.  Alexander completed the registration process for the portal in August 2010.  Midlar Aff. ¶ 9 & Ex. 5.

our respective rights to have a Claim decided by a court, judge, jury and, where permitted by law, an administrative agency" and instead "agree that either you or we may require the other to arbitrate a Claim in accordance with this Program" (emphasis omitted)).  For purposes of the Arbitration Program, a "claim" includes "any employment-related or compensation-related claims, disputes, controversies or actions between you and us that in any way arise from or relate to your employment with us or the termination of your employment with us and that are based upon a 'legally protected right.'"  *Id.* at 58 (emphasis omitted).  The term "legally protected right" is defined as "any right that is guaranteed to you or protected for you by statute, regulation, ordinance, constitution, contract or common law," and "includes (but is not limited to) rights under . . . the Family and Medical Leave Act."  *Id.* at 58-59.  The description of the Arbitration Program in the Associate Handbook specifies the Program "is an essential element of your continued relationship with Raymour & Flanigan and is a condition of your employment," but "is not a contract of employment and does not change your status as an at-will employee of Raymour & Flanigan."  *Id.* at 57 (emphasis omitted).

On February 1, 2012, Raymour notified all employees via email that the company had revised its Associate Handbook to include the Arbitration Program.[4]  Midlar Aff. ¶ 13 & Ex. 7.  The email advised employees, "[b]ecause of the significant updates that have been made, we will be requiring all associates to acknowledge that they have reviewed the revised handbook."  Midlar Aff. Ex. 7 (emphasis omitted).  To facilitate such review, the email contained a link to the portal through which employees could review and acknowledge the revised Handbook.  *Id.*  The email stressed employees should give "special attention" to the updated sections when reviewing the Handbook and provided the page numbers on which these sections appeared.  *Id.*  Alexander

---

[4] The email also notified employees of two other revisions to the Handbook, neither of which is relevant here.

logged onto the portal on February 3, 2012, and electronically acknowledged that he had reviewed the revised Associate Handbook, which included the Arbitration Program.  Midlar Aff. ¶ 17 & Ex. 10.

Alexander thereafter continued working for Raymour, and in September 2012, he took approved FMLA leave to care for his mother, with whom he resided and who was then suffering from a serious heart condition.  *See* Compl. ¶¶ 11-14.  Alexander returned to work approximately five weeks later, but continued to take additional FMLA leave on an intermittent basis to care for his still-ailing mother.  *See id.* ¶¶ 15-16.  On March 12, 2013, Alexander took a half-day of intermittent FMLA leave.  *Id.* ¶ 19.  When he returned to work the following day, Raymour terminated his employment.  *Id.* ¶ 21.

Following his termination, Alexander filed suit against Raymour in September 2013, alleging the termination was in retaliation for his exercise of his rights under the FMLA. Raymour thereafter filed the instant motion to compel, asking this Court to compel Alexander to submit his FMLA claim to arbitration in accordance with Raymour's Arbitration Program. Alexander opposes the motion, arguing the Arbitration Program is not enforceable on the sole basis that Raymour offered him no additional consideration beyond continued employment in exchange for his forfeiture of his constitutional right to a jury trial.

**DISCUSSION**

Raymour seeks to compel arbitration of Alexander's FMLA claim pursuant to Section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4.  Under that provision, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court that would otherwise have jurisdiction over the parties' dispute "for an order directing that such arbitration proceed in the manner provided for in such

agreement." *Id.* The statute further directs that, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

Arbitration is a matter of contract, and a party cannot be forced to arbitrate "unless that party has entered an agreement to do so." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993) (citation and internal quotation marks omitted). Thus, before compelling arbitration, a court must determine (1) "that a valid agreement to arbitrate exists between the parties" and (2) "that the specific dispute comes within the substantive scope of the agreement." *Id.* (citation and alteration omitted).

The Third Circuit recently clarified the applicable standard for evaluating a motion to compel arbitration as follows:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal citations and quotation marks omitted).

In this case, the existence of an agreement to arbitrate is not apparent from the face of Alexander's Complaint, which does not mention Raymour's Arbitration Program or the Associate Handbook. Rather, Raymour relies entirely on matters outside the pleadings to

5

establish the existence of an arbitration agreement. Although ordinarily when the complaint and its exhibits are unclear regarding the agreement to arbitrate, the party resisting arbitration should be given the opportunity to conduct discovery on the question of arbitrability, here, Alexander does not dispute Raymour's evidence regarding the company's adoption of the Arbitration Program or his own acknowledgement of the Program, and he has not requested an opportunity to take discovery regarding the existence of an arbitration agreement. Instead, Alexander contests the existence of an enforceable arbitration agreement solely on the basis that his continued employment with Raymour after receiving notice of the Arbitration Program does not constitute sufficient consideration for an arbitration agreement under Pennsylvania law. Because Alexander does not seek to take discovery, the Court will consider Raymour's motion under the summary judgment standard on the existing record, viewing evidence in the light most favorable to Alexander and determining whether there is a genuine factual dispute as to the existence of an agreement to arbitrate. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 & n.9 (3d Cir. 1980) (holding the existence of an agreement to arbitrate should be submitted to a jury if in doubt, but may be decided by the court as a matter of law "when there is no genuine issue of fact concerning the formation of the agreement").

Alexander does not dispute that this case satisfies the second prong of the test for arbitrability, i.e., that his FMLA claim comes within the scope of Raymour's Arbitration Program. The description of the Program included in the Associate Handbook specifies the Program requires arbitration of any employment-related claims that arise from or relate to an employee's employment (or termination from employment) with Raymour and "are based upon a 'legally protected right,'" a term expressly defined to include "rights under . . . the [FMLA]."

Midlar Aff. Ex. 10, at 57-59 (emphasis omitted).  The Handbook thus makes clear FMLA claims brought by an employee against Raymour are within the scope of the Arbitration Program.

As to the first prong of the test, to determine whether the parties entered into a valid arbitration agreement, a federal court must apply "ordinary state-law principles that govern the formation of contracts."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The applicable state-law principles are those governing the formation of contracts generally; state-law principles "that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" are preempted.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009).

Under Pennsylvania law, which the parties agree is the relevant state law in this case, "contract formation requires:  (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration."  *Kirleis*, 560 F.3d at 160.  The Pennsylvania courts have recognized that provisions in an employee handbook can, in some circumstances, "constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties."  *Bauer v. Pottsville Area Emergency Med. Servs., Inc.*, 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000) (quoting *Darlington v. Gen. Elec.*, 504 A.2d 306, 320 (Pa. Super. Ct. 1986) (Beck, J., concurring)).  As the Pennsylvania Superior Court has explained,

> [a] unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance.  In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms.  The employee signifies acceptance of the terms and conditions by

7

>continuing to perform the duties of his or her job; no additional or special consideration is required.

*Id.* (quoting *Darlington*, 504 A.2d at 320 (Beck, J., concurring)).  The formation of a unilateral contract in this manner is not inconsistent with at-will employment; rather, "the provisions comprising the unilateral contract may be viewed as a contract incidental or collateral to at-will employment."  *Caucci v. Prison Health Servs., Inc.*, 153 F. Supp. 2d 605, 611 (E.D. Pa. 2001) (citation and internal quotation marks omitted).

Although the Pennsylvania courts have not addressed the precise issue, several courts in this district, applying Pennsylvania law, have held an employer's distribution of a mandatory arbitration policy to existing at-will employees—as part of an employee handbook or as a freestanding document—constitutes an offer of continued employment, subject to the terms of the arbitration program, which an employee accepts by continuing his employment after receiving notice of the program.  *See, e.g.*, *Grant v. Phila. Eagles, LLC*, No. 09-1222, 2009 WL 1845231, at *4 (E.D. Pa. June 24, 2009); *Gutman v. Baldwin Corp.*, No. 02-7971, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002); *Hamilton v. Travelers Prop. & Cas. Corp.*, No. 01-11, 2001 WL 503387, at *2 (E.D. Pa. May 11, 2001); *Wilson v. Darden Rests., Inc.*, No. 99-5020, 2000 WL 150872, at *3-4 (E.D. Pa. Feb. 11, 2000); *Venuto v. Ins. Co. of N. Am.*, No. 98-96, 1998 WL 414723, at *5-6 (E.D. Pa. July 22, 1998); *cf. Brennan v. CIGNA Corp.*, 282 F. App'x 132, 135-36 (3d Cir. 2008) (holding that a valid arbitration agreement existed where employer adopted and distributed to employees a mandatory arbitration policy making binding arbitration a term and condition of employment, and employees acknowledged in writing they had received and reviewed the policy).

Raymour asserts—and Alexander does not dispute—that by distributing notice of the Arbitration Program to employees in February 2012, specifying the Program was "an essential

element of your continued employment relationship with Raymour & Flanigan and . . . a condition of your employment," it offered Alexander continued at-will employment in exchange for an agreement to arbitrate all employment-related disputes. *See* Def.'s Mem. in Supp. of Mot. to Compel Arbitration 11 (quoting Midlar Aff. Ex. 6, at 57 (emphasis omitted)). Alexander also does not dispute Raymour's contention that he accepted the offer by acknowledging he had reviewed the revised Handbook, including the Arbitration Program, and thereafter remaining employed with Raymour.[5]

Rather, Alexander contests only the consideration element of contract formation, arguing his continued employment by Raymour alone is insufficient consideration for the forfeiture of his constitutional right to a jury trial. Acknowledging the Pennsylvania state courts have yet to address this issue,[6] Alexander relies on Pennsylvania cases holding a restrictive covenant executed after the commencement of employment must be supported by "new consideration"

---

[5] The district courts that have considered Raymour's Arbitration Program to date have reached different conclusions, under different states' laws, as to whether the company's promulgation of the Program results in an enforceable arbitration agreement. A district court in New Jersey held the Arbitration Program did not constitute a valid agreement to arbitrate under New Jersey law based on certain disclaimer language on the first page of the Associate Handbook in which the written description of the Program appears. *See Raymours Furniture Co. v. Rossi*, No. 13-4440, 2014 WL 36609, at *6-9 (D.N.J. Jan. 2, 2014). A district court in Massachusetts reached the opposite conclusion, holding Raymour's promulgation of the Arbitration Program constitutes a valid agreement to arbitrate under Massachusetts law. *See Daniels v. Raymours Furniture Co.*, No. 13-11551, 2014 WL 1338151, at *6 (D. Mass. Mar. 31, 2014). Here, as noted, Alexander does not dispute Raymour's contention that he accepted the company's offer of continued at-will employment, subject to the Arbitration Program, by continuing his employment with Raymour after acknowledging his receipt and review of the revised Handbook. Because Alexander has not advanced any argument based on the disclaimer language cited in *Rossi*, the Court has not considered the impact of the disclaimer, if any, under Pennsylvania law.

[6] The question whether an employee's continued employment constitutes consideration for an agreement to arbitrate was among the issues raised in *Quiles v. Financial Exchange Co.*, 879 A.2d 281, 284 (Pa. Super. Ct. 2005). The court found it unnecessary to reach this issue, however, as the employee had never received the employee handbook containing the arbitration provision and there was thus no valid agreement to arbitrate. *See id.* at 285, 288.

beyond continued employment.  *See Maint. Specialties, Inc. v. Gottus*, 314 A.2d 279, 281 (Pa. 1974); *Bilec v. Auburn & Assocs., Inc. Pension Trust*, 588 A.2d 538, 542 (Pa. Super. Ct. 1991); *Wainwright's Travel Serv., Inc. v. Schmolk*, 500 A.2d 476, 478 (Pa. Super. Ct. 1985).  He argues the same rule should apply to post-hiring arbitration agreements.

Although the Court is sympathetic to Alexander's position, the weight of authority is otherwise.  Numerous courts in this district have held "continued employment fulfills the consideration requirement [for an arbitration agreement] under Pennsylvania law."  *See Grant*, 2009 WL 1845231, at *5 (collecting cases).  While the Third Circuit has not had occasion to address the issue, the Court of Appeals has noted in dicta the argument that continued employment is not adequate consideration for an agreement to arbitrate is "questionable" in light of decisions to the contrary, including *Venuto v. Insurance Company of North America*, a decision by a court in this district.  *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 n.3 (3d Cir. 2002).  Alexander argues the analysis in *Venuto* is flawed because it does not address the enforceability of the arbitration policy at issue under Pennsylvania state law.  *See* Pl.'s Opp'n 2. But under Pennsylvania law, the requirement that a post-employment restrictive covenant be supported by new consideration is an exception to the general rule that "the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms," which the employee accepts "by continuing to perform the duties of his or her job; no additional or special consideration is required."  *Bauer*, 758 A.2d at 1269 (quoting *Darlington*, 504 A.2d at 320 (Beck, J., concurring)); *see also Maint. Specialties, Inc.*, 314 A.2d at 284 (Pomeroy, J., concurring) (characterizing the requirement of new consideration for a post-employment restrictive covenant as an exception to the general rule that "either party may insist upon a change in the terms of employment as a condition for continuing an at-will

employment relationship, and that the continued employment is the consideration supporting any such change"). The cases holding an employee's continued employment is adequate consideration for a post-employment arbitration agreement are consistent with this general rule. Finally, at least one federal court of appeals has rejected the same analogy Alexander attempts to draw to the law of noncompetition agreements, noting the motivations for restricting noncompetition agreements "are not necessarily applicable to arbitration agreements,"[7] and holding the FAA prohibits states from imposing special restrictions on arbitration agreements in any event. *See Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 73-74 (1st Cir. 2011). Based on the foregoing authorities, the Court concludes Alexander's agreement to arbitrate was supported by adequate consideration.

Because the Court concludes there is a valid agreement to arbitrate between Alexander and Raymour and because Alexander's FMLA claim is within the scope of that agreement, Raymour's motion to compel arbitration will be granted, and further proceedings in this case will be stayed pending the outcome of the arbitration.[8]

An appropriate order follows.

---

[7] For example, "restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Hess v. Gebhard & Co.*, 808 A.2d 912, 917 (Pa. 2002). Arbitration agreements, in contrast, are generally favored under both federal and Pennsylvania law. *See Century Indem. Co.*, 584 F.3d at 522; *Quiles*, 879 A.2d at 285, 287.

[8] In its motion, Raymour asks this Court to stay further proceedings in this case pending arbitration and to dismiss Alexander's Complaint. Because Raymour seeks a stay, however, dismissal is inappropriate. *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 [of the FAA] affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). Accordingly, the Court will stay, rather than dismiss, this case.

BY THE COURT:


\_\_\_/s/ Juan R. Sánchez_____
Juan R. Sánchez, J.